**FILED**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

SEP 1 2 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| WENDY TIEFENBACHER ) <br> 3133 CONNECTICUT AVE., N.W. ) <br> APT. 115 ) <br> WASHINGTON, DC 20008 ) <br> 202-986-1777 ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> AMERICAN ASSOCIATION ) <br> OF RETIRED PERSONS (AARP) ) <br> 601 E STREET, N.W. ) <br> WASHINGTON, D.C. 20049 ) <br> ) <br> Serve:  Registered Agent ) <br> CT Corporation System ) <br> 1015 15th Street, N.W. ) <br> Suite 1000 ) <br> Washington, D.C.  20005 ) <br> ) <br> Defendant. ) | CASE NUMBER  1:05CV01802 <br><br> JUDGE: Colleen Kollar-Kotelly <br><br> DECK TYPE: Employment Discrimination <br><br> DATE STAMP: 09/12/2005 <br><br> JURY TRIAL DEMANDED |

### COMPLAINT

COMES NOW the Plaintiff Wendy Tiefenbacher by and through her attorney, for her complaint against defendants, states the following:

### INTRODUCTION

1.    This is a civil action brought to redress retaliation by defendant's by which the plaintiff was subject to termination because defendant's complaint process for harassment claims was flawed, ineffective, and futile.  These claims are brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. prohibiting retaliation and  the District of Columbia Human Rights Act of 1977, D.C. Code § 2-1402, prohibiting retaliation, and District

1

of Columbia common law prohibiting negligent training and supervision, and intentional infliction of emotional distress. The plaintiff seeks a declaratory judgment, compensatory and punitive damages, attorney's fees and costs, and other relief as deemed just and proper.

## JURISDICTION AND VENUE

2.    Jurisdiction exists in the court pursuant to 28 U.S.C. §§ 1331. Plaintiff further invokes the supplemental jurisdiction of the court pursuant to 28 U.S.C. § 1367 to adjudicate pendent claims arising under the laws of the District of Columbia.

3.    Venue is proper in the court under 28 U.S.C. § 1391(b) because the incident at issue occurred in the District of Columbia.

## PARTIES

4.    Plaintiff, Wendy Tiefenbacher (hereinafter referred to as "Plaintiff ") is a female and resident of the District of Columbia. She formerly held the position of Director of Photography for AARP (originally Modern Maturity, later MM magazine, later AARP the Magazine).

5.    Defendant, The American Association of Retired Persons (hereinafter referred to as "AARP") is a nonprofit membership organization of persons 50 and older, which seeks to address their needs and interests. AARP is organized into a central headquarter, an office in every state, as well as the District of Columbia, the Virgin Islands, and Puerto Rico, and over 2,500 local chapters. AARP's national headquarters is located in Washington, D.C. The national headquarter coordinates the activities of the field operations and state offices, and provides support to the chapters, which are separately incorporated groups.

## STATEMENT OF FACTS

6.       On or about mid-June 2003, while having lunch at Teaism Restaurant in Washington, D.C with Estelle Slon and Sudha Gallagher, a Copy Editor of AARP Magazine, Ms. Teifenbacher relayed how Eric Seidman, Art Director sought to demean and humiliate her while discussing art department matters a few days earlier. He exploded demeaning, vulgar expletives at Ms. Tiefenbacher as a way of reinforcing his position and control over her. As Ms. Teifenbacher relayed Mr. Seidman's conduct, unexpectedly, Mr. Slon, Executive Editor of AARP Magazine, approached their table to speak with Mrs. Slon and heard Ms. Tiefenbacher's comments about Mr. Seidman's conduct. Mr. Slon did not comment at that time.

7.       Steve Slon recently replaced Hugh L. Delehanty as Executive Editor-in-Chief of AARP Magazine and Mr. Delehanty became Publications Director of AARP.

8.       For months, Ms. Teifenbacher and her female staff were subject to obscene, crude, and sexually offensive statements by Mr. Seidman. On a daily basis, Mr. Seidman stated he was going out for a quickie, which the women in the office understood to be a sexual reference. He continuously and routinely mentioned circumstances where he sought to compliment a female employee for a work-related accomplishment, by telling female employees that he wanted to give them hickies. Mr. Seidman also referred to Ms. Courtney Murphy-Price, Art Director, regarding his preference towards her wearing skirts because she had great legs. As the Director of Photography several staff members expressed to Ms. Teifenbacher they found Mr. Seidman's comments to be offensive and discomforting. Mr. Seidman also engaged in browbeating tactics, where he would call Ms. Teifenbacher into his office berate, belittle, and verbally abuse her.

3

9.    During the course of her employment, Ms. Tiefenbacher developed a friendship with Estelle Slon, wife of the newly promoted Executive Editor-in-Chief of AARP Magazine Steven Slon.   When Ms. Slon confided in Ms. Tiefensbacher about Mr. Slon's difficulty with working with Mr. Delehanty, Ms. Tiefenbacher felt comfortable sharing her own difficulties with her immediate supervisor, Mr. Seidman.  Ms. Tiefenbacher relayed Mr. Seidman's crude sexist comments and the abusive, humiliating environment he had created in the art department.  These conversations were always between friends and noted as off the record.  Over time Ms. Teifenbacher learned that Ms. Slon repeated her (Teifenbacher) statements regarding Mr. Seidman to her (Ms. Slon) husband.

10.    On or about mid-June 2003, soon after the luncheon described above, at a previously scheduled meeting, Ms. Teifenbacher met with Mr. Slon to discuss her Photo Editor duties and concerns, but instead he warned Ms. Tiefenbacher in a hostile and threatening manner, (referring back to the lunch meeting) that if she ever mentioned Mr. Seidman's conduct again she should look for another job.

11.    Feeling humiliated and shocked by Ms. Slon's conduct, Ms. Teifenbacher left his office physically shaken and distraught.  Within a few minutes, Mr. Slon attempted to apologize for his harsh tone, but did not rescind his comments.

12.    Unable to receive assistance from management Ms. Teifenbacher confided in Jessica Lehane Day that she intended to seek the assistance of outside counsel.  As a result, Ms. Teifenbacher became the victim of derision.  Ms. Day told Mr. Seidman, Carl Lehman-Haupt, Courtney Murphy Price and others that Ms. Teifenbacher intended to sek the advice of an attorney regarding Mr. Seidman's conduct.

4

13.    On or about June 9, 2003,  Mr. Seidman and Carl Lehman Haupt, the Group Design Director at AARP Magazine, called Ms. Tiefenbacher into Mr. Seidman's office on pretense of a meeting and verbally attempted to browbeat her and coerce her to resign from AARP.  Ms. Tiefenbacher refused to agree to resign from her position and left Seidman's office in tears.

14.    One week later, Mr. Seidman and Mr. Lehman Haupt again attempted to coerce Ms. Tiefenbacher to leave AARP.  When she again refused to voluntary resign, Mr. Seidman presented her with the Performance Concern Memorandum.  When Ms. Tiefenbacher received the Performance Concerns Memorandum, on or about July 7, 2003, she was deeply distressed because her performance was rated as outstanding throughout her tenure at AARP.  She viewed the Performance Concerns Memorandum to be another step in a plan by Mr. Seidman and Mr. Lehman-Haupt to remove her, because she refused to be coerced or pressured to resign.

15.    Ms. Tiefenbacher wrote a full reply to the Performance Concerns Memorandum, on July 9, 2003, but reconsidered submitting her reply to management in hopes that talks with Mr. Seidman could resolve the matter.  Instead, she submitted a less scathing version, leaving out detailed responses to every concern raised and references to her complaint of harassment, so as to avoid acrimony.

16.    Near the end of July 2003, she was told by a Human Resource employee that AARP Human Resource Department was conducting an investigation into her allegations of sexual harassment which were set forth in her July 10, 2003 response to Mr. Seidman's Performance Concern Memorandum.

17.    However, through discussions with Mr. Delehanty, on or about July ___ it became obvious to her that he was not giving good-faith credence to her side of the story and had

decided to support Mr. Seidman no matter what. As a result, Ms. Teifenbacher decided that it would be best to get all the details on the record. In response, she released her initial full-length response.

18.    On August 8, 2003 under the pretense of discussing the findings of the Human Resources investigation of her allegations about Mr. Seidman's lewd, sexist comments, and intimidating actions, Editor in Chief, Hugh Delehanty informed her that she was fired. Security then escorted her from the building without an opportunity to collect her belongings or contact her staff. Rather than treating her like a professional that had made major contributions to the AARP Magazine and other publications, she was treated like a common criminal. Ms. Tiefenbacher was only allowed to return to collect her personal affects that evening and only for one hour.

19.    Ms. Teifenbacher did not receive an exit interview, severance, or her three weeks vacation pay. In addition, management did not inform Ms. Teifenbacher about securing he healthcare benefits or reimbursement for photo shoots expenses.

## COUNT I

### 42 USC § 2000e et seq.

20.    Plaintiff incorporates by reference paragraphs 1 through 18 as if fully set forth herein.

21.    Defendant AARP discriminated against Plaintiff Tiefenbacher, a female employed as the Director of Photography,  when she engaged in a statutorily protected anti-discrimination activity in opposition of the sexual harassment and the creation of a hostile work

environment by, Eric Seidman, her supervisor and Art Director, in violation of section 703(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

22.    Defendant AARP took an adverse employment action against Ms. Teifenbacher by issuing her an unsubstantiated and unjustified Performance Concern Memorandum and subsequently, terminating Mr. Teifenbacher's employment.

23.    The close proximity in time between Ms. Teifenbacher's complaint in opposition to sexual harassment and Defendant AARP's decision to issue the Performance Concern memorandum and subsequently terminate her employment demonstrates a causal connection existed between and Ms. Teifenbacher's protected activity and the adverse action by management.

24.    As a direct and proximate result of Defendant's discrimination, Plaintiff Tiefenbacher suffered and will continue to suffer severe damages and injuries, including but not limited to humiliation, loss of self-esteem, loss of reputation, fear, anxiety, embarrassment and emotional distress.

## COUNT II

### District of Columbia Human Rights Act of 1977, DC § 2 -1402.11

25.    Plaintiff incorporates by reference paragraphs 1 through 18 as if fully set forth herein.

26.    Defendant AARP discriminated against Plaintiff Tiefenbacher, a female employed as the Director of Photography,  when she engaged in a statutorily protected anti-discrimination activity in opposition of the sexual harassment and the creation of a hostile work environment by, Eric Seidman, her supervisor and Art Director, in violation of the District of Columbia Human Rights Act of 1977, Title 1, Chapter 25, DC § 2 -1402.11 et seq.

27.    Defendant AARP took adverse employment action against Ms. Teifenbacher by issuing her an unsubstantiated and unjustified Performance Concern Memorandum and subsequently, terminating Mr. Teifenbacher's employment.

28.    The close proximity in time between Ms. Teifenbacher's complaint in opposition to sexual harassment and Defendant AARP's decision to issue the Performance Concern memorandum and subsequently terminate her employment demonstrates a causal connection existed between and Ms. Teifenbacher's protected activity and the adverse action by management.

29.    As a direct and proximate result of Defendant's discrimination, Plaintiff Tiefenbacher suffered and will continue to suffer severe damages and injuries, including but not limited to humiliation, loss of self esteem, loss of reputation, fear, anxiety, embarrassment and emotional distress.

## COUNT III

### Intentional Infliction of Emotional Distress

30.    Plaintiff incorporates by reference paragraphs 1 through 18 as if fully set forth herein.

31.    Defendant AARP's conduct regarding Ms. Tiefenbacher's protected activity in opposition of the sexual harassment and subsequent decision to terminate her employment was extreme, outrageous, intentional and reckless.

32.    As a direct and proximate result of Defendant's conduct, Plaintiff Tiefenbacher suffered and will continue to suffer severe damages and injuries, including but not limited to humiliation, loss of self-esteem, loss of reputation, fear, anxiety, embarrassment, and emotional distress.

8

## COUNT IV

### Negligent Failure To Train And Supervise

33.    Plaintiff incorporates by reference paragraphs 1 through 18 as if fully set forth herein.

34.    Defendant AARP knew or should have known that Mr. Seidman behaved in a dangerous or otherwise incompetent manner towards Ms. Teifenbacher and other female employees when Mr. Slon, Executive Editor of AARP Magazine, heard Ms. Teifenbacher's statements on or about mid-June 2003 and her subsequent July 10, 2003 response to Mr. Seidman's Performance Concern Memorandum.

35.    Defendant AARP armed with that actual or constructive knowledge, failed to adequately train and supervise Mr. Seidman and/or management in response to Ms. Teifenbacher's claims of sexual harassment.

36.    As a direct and proximate result of Defendant's conduct, Plaintiff Tiefenbacher suffered and will continue to suffer severe damages and injuries, including but not limited to humiliation, loss of self-esteem, loss of reputation, fear, anxiety, embarrassment, and emotional distress.

37.    Plaintiff incorporates by reference paragraphs 1 through 18 as if fully set forth herein.


WHEREFORE, the Plaintiff demands judgment against the Defendant and the following relief:

a.  An award of compensatory and punitive damages in an amount of SIX HUNDRED THOUSAND DOLLARS ($600,000) for Plaintiff Wendy Tiefenbacher;

b.  Front Pay and Back Pay in the amount of FOUR HUNDRED AND FIFTEEN THOUSAND DOLLARS ($415,000);

c.  Disbursements, costs, expenses, interests and attorney's fees; and

d.  For such other relief as the court deems proper and just.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL COUNTS.

Respectfully submitted,

**THE COCHRAN FIRM**

Lawrence A. Thrower
1100 New York Avenue
West Tower, Suite 250
Washington, D.C. 20005
(202) 682-5800 (Direct)
(202) 408-8851 (Facsimile)
DC. Bar No. 473875

Dated: September 12, 2005

10

EEOC Form 161 (10/96)

### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Wendy Tiefenbacher
3133 Connecticut Avenue NW, #115
Washington, DC 20008

From: Equal Employment Opportunity Commission
Philadelphia District Office
The Bourse
21 S. Fifth Street, Suite 400
Philadelphia, PA 19106-2515

[ ]    *On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 100-2004-00117 | Legal Unit | (215) 440-2828 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]    The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]    Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[ ]    The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

[ ]    We cannot investigate your charge because it was not filed within the time limit required by law.

[ ]    Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ]    While reasonable efforts were made to locate you, we were not able to do so.

[ ]    You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[ X]    The EEOC issues the following determination:   Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]    The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]    Other *(briefly state)*  _____

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not **be collectible.**

On behalf of the Commission

_____                                    6/14/05
*William D. Cohen*
/s— Marie M. Tomasso, District Director                              *(Date Mailed)*

Enclosure(s)

cc:    AARP
C. Gregory Stewart, Esquire (For Charging Party)
Mel Radowitz, Assoc. General Counsel (For Respondent)