IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WENDY TIEFENBACHER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AMERICAN ASSOCIATION OF RETIRED )<br>PERSONS (AARP), )<br>)<br>Defendant. )<br>) | Civil Action No. 1:05cv01802CKK |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT III OF THE CLAIM**

Plaintiff, Wendy Tiefenbacher, by and through her undersigned counsel of record, opposes Defendant's Motion to Dismiss Count III of the Complaint and requests that this Court deny Defendant's Motion for two reasons: first, if the allegations of the Complaint are assumed to be true, Plaintiff has properly plead conduct outrageous enough to support a claim for intentional infliction of emotional distress; and second, because Plaintiff should be given the opportunity, through discovery to further prove the allegations of her Complaint.

I.     **BACKGROUND**

Plaintiff worked for Defendant American Association of Retired Persons ("AARP") as Director of Photography. (Complaint ¶ 4) In her position, Ms. Teifenbacher supervised a female staff. (Complaint ¶ 8) Eric Seidman was the Art Director for AARP and Ms. Teifenbacher's immediate supervisor. (Complaint ¶ 9) Mr. Seidman routinely made comments to the female staff that was sexually suggestive, unwelcome, demeaning an embarrassing. (Complaint ¶ 8) The staff went to Ms. Teifenbacher to express their concern and offense to Mr. Seidman's

comments. When Ms. Teifenbacher attempted to discuss these issues of concern with Mr. Seidman he verbally abused, berated and belittled her. (Complaint ¶ 8)

Ms. Teifenbacher mentioned her difficulties with Mr. Seidman to the wife of another AARP official. That person discussed Ms. Teifenbacher's comments with her husband, Mr. Slon, Editor-In-Chief of AARP Magazine. (Complaint ¶ 9) Mr. Slon, Editor-in-Chief of AARP Magazine, met with Ms. Teifenbacher supposedly on another matter, and instead warned her that if she mentioned Mr. Seidman's offensive conduct again that "she should look for another job." Mr. Slon made this statement as part of a hostile and threatening rage that caused physical manifestations of anxiety. (Complaint ¶ 11) Mr. Slon's outburst was so intense that even he noticed the effect on Ms. Teifenbacher and later apologized for the manner in which he spoke to her. He did not, however, retract his remarks. (Complaint ¶ 11) Ms. Teifenbacher realized at that point that the management of AARP would not protect her staff from the sexual harassment from Mr. Seidman and would in fact punish her for attempting to resist these illegal activities.

In frustration Ms. Teifenbacher confided in someone that she intended to seek the assistance of outside counsel relating to this matter. (Complaint ¶ 12) That person told Mr. Seidman and others. (Complaint ¶ 12)

Shortly thereafter a campaign to terminate Ms. Teifenbacher began. Management at AARP repeatedly requested that she resign. In doing so, management used verbal abuse, coercion, and dishonest tactics designed to create a hostile work environment for Ms. Teifenbacher. Ms. Teifenbacher refused to resign. On several occasions management caused such anger, stress and anxiety that Ms. Teifenbacher left meetings with management in tears. (Complaint ¶ 13) Management escalated their efforts to terminate Ms. Teifenbacher by issuing

her a Performance Concerns Memorandum, something she had never received before. (Complaint ¶ 15)

Ms. Teifenbacher answered the Performance Concerns Memorandum with a reply that, once again, put AARP on notice of illegal sexual harassment as well as individual managers' attempts to terminate her in retaliation for her attempts to combat the harassment and the hostile work environment created by the harassment. (Complaint ¶ 15) AARP's response was a half-hearted investigation that ultimately failed to address either the harassment or the retaliation by Mr. Seidman and others in upper management. (Complaint ¶¶ 16-18) Instead, under the pretense of meeting to discuss the "investigation" into Mr. Seidman's harassment, AARP summarily fired Ms. Teifenbacher and had her escorted from the building.

II.     **STANDARD OF REVIEW FOR DISMISSAL**

A Court must construe the allegations and facts of a Complaint in a light most favorable to the Plaintiff and draw all reasonable inferences in favor of the Plaintiff when ruling on a motion under Rule 12 (b)(6). Neitzke v. Williams, 490 U.S. 319 (1989). All the allegations of the Complaint must be taken as true, and only if it is clear as a matter of law that no relief could be granted should a Complaint be dismissed. Id.

Defendant's Motion should be denied because under the proper analysis if the allegations of the Complaint are taken as true, at the very least, it is not clear that no relief could be granted. In all likelihood, the acts of Defendant will justify a finding of Intentional Infliction of Emotional Distress. For these reasons alone Defendant's Motion should be denied.

III. **PLAINTIFF MAKES AN APPROPRIATE COMPLAINT FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Defendant's argument for Dismissal is basically that the alleged activities do not rise to the level necessary to claim intentional infliction of emotional distress. Under Defendant's scenario no set of facts would justify the claim. Plaintiff was subjected to a campaign of activities by numerous upper management personnel at AARP for one reason; she spoke out against a manager sexually harassing her and other employees. The level of hostility and egregious conduct projected towards Ms. Teifenbacher was inexcusable, intentional and extreme. Her claim for these acts is well plead and should be given the opportunity for further investigation.

A. **Plaintiff meets the elements of Intentional Infliction of Emotional Distress.**

A defendant is liable for intentional infliction of emotional distress if that defendant engaged in (1) extreme or outrageous conduct which (2) intentionally or recklessly causes (3) severe emotional distress to another. Kerrigan v. Britches of Georgetowne, Inc., 705 A.2d 1064, 1075 (D.C. 1991)).

Defendant's acts fall within the strict requirements discussed in Kerrigan. Defendant's activities went beyond mere insults and occasional threats, indignities and annoyances when their activities went beyond the support of Mr. Seidman's harassing activities and became an active, ongoing campaign to harass, embarrass and ultimately terminate Ms. Teifenbacher. As Defendant discusses in its brief, occasional annoyances and the like are not enough to meet the strict requirements of the cause of action. However, the allegations of this Complaint show what started as regular, illegal harassing activities by one person turned into a widespread campaign to

demean, harass and terminate a woman <u>because she attempted to address ongoing harassment in the workplace</u>.

Intentional Infliction of Emotional Distress is plead if the conduct alleged is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Id.</u> Defendant would have the Court believe that AARP's support of harassment in the workplace and persecution of the one person willing to address the harassment somehow is still within the bounds of common decency in this community. Although many activities may be in poor taste but still not considered outrageous, the activities alleged in the Complaint, and taken as true for purposes of this Motion are indeed outrageous.

For these reasons, and Defendant's failure show that the allegations of the Complaint could not result in recovery their motion should be denied.

**B.     Plaintiff properly alleges with particularity the elements of the Complaint.**

Defendant incorrectly argues that the facts alleged cannot establish emotional distress. Because, as discussed above, Defendant pursued a campaign against Plaintiff in retaliation for her expression of concern for a manager a AARP harassing an entire department of women until they complained to her, Plaintiff properly plead facts that, if true, would allow for recovery. Plaintiff alleged physical manifestations of stress as direct result of Defendant's efforts to coerce harass and intimidate her. The reason for the campaign was in retaliation for an illegal act, sexual harassment. The efforts made by management were concerted, intentional and calculated to destroy Ms. Teifenbacher's career both within and outside of AARP.

Defendant argues about the allegations of this Complaint as if each one is in its own separate box and therefore could not rise to the level of intentional infliction of emotional

distress. The Complaint, however, shows that the acts of the Defendant accumulated, and multiplied. Defendant's acts went from a single threat to an intentional planned conspiracy to harm Ms. Teifenbacher's reputation, career and integrity.

IV.    CONCLUSION

For the reasons stated above and because Defendant failed to show that the allegations of the Complaint could not support a claim for Intentional Infliction of Emotional Distress their Motion must be DENIED.

Respectfully submitted,

_____/s/_____
Lawrence A. Thrower
Bar No. 473875
1229 15th Street, N.W.
Washington, D.C. 20005
(202) 234-0000
Attorney for Plaintiff

DATED:    January 11, 2006

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing Consent Motion to Extend Time to Reply to Defendant's Motion to Dismiss was served this 11th day of January, 2006, by electronic service, on the following:

Frank C. Morris, Jr., Esq.
EPSTEIN BECKER GREEN, P.C.
1227 25th Street, N.W.
Washington, D.C. 20037

                                                                                /s/
                                             Lawrence A. Thrower
                                             D.C. Bar No. 473875