IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WENDY TIEFENBACHER,**<br><br>     **Plaintiff,**<br><br>  *v.*<br><br>**AMERICAN ASSOCIATION OF RETIRED PERSONS (AARP),**<br><br>     **Defendant.** | **Civil Action No. 1:05cv01802 (CKK)** |

### REPLY IN SUPPORT OF MOTION TO DISMISS COUNT III

Now comes Defendant AARP, improperly named herein as "American Association of Retired Persons (AARP)," and files this Reply to Plaintiff's belatedly filed Opposition to Defendant's Motion to Dismiss Count III of the Complaint for failure to state a claim.[1]

As discussed below, despite her improper efforts to misstate and embellish the allegations of the Complaint, Plaintiff offers nothing to show that Count III alleges anything close to the degree of culpability, type of conduct, or type of harm necessary to support a claim for intentional infliction of emotional distress. Indeed, she does not dispute her failure to allege the required facts to support intentional or reckless conduct

---

[1] Plaintiff did not file her Opposition until 8:57 a.m. on Saturday, January 14, 2006. As Defendant's Motion to Dismiss was filed on December 19, 2005, pursuant to L. Cv. R. 7(b) and Fed. R. Civ. P. 6(a), Plaintiff's Opposition was due on January 3, 2006. On January 11, 2006, the Court granted the Motion to Dismiss as unopposed. However, later that day Plaintiff belatedly filed a Consent Motion for extension of time to respond until January 13, 2006 (consent was granted to the extension until January 13, but not to filing outside the extension requested). Plaintiff also filed a Motion to Reconsider the dismissal on the grounds that she had attempted to file her Consent Motion on January 10, 2006, which she (incorrectly) asserted was the date her Opposition was due. On January 18, 2006, the Court granted the Consent Motion *nunc pro tunc* and also granted the Motion to Reconsider. However, even under the terms of the Consent Motion, the Plaintiff's Opposition was due on January 13, 2006, and thus the January 14, 2006 filing was untimely. Accordingly, the Court may disregard the Opposition and grant the Defendant's Motion to Dismiss as unopposed.

DC:477775v2

or extreme emotional distress. Accordingly, Count III should be dismissed in its entirety, with prejudice.

I. **THE COURT SHOULD DISREGARD PLAINTIFF'S MISSTATEMENTS AND EMBELLISHMENTS REGARDING THE COMPLAINT'S ALLEGATIONS**

Presumably in recognition of the failure of the express allegations of Count III of the Complaint to state a claim, Plaintiff in her Opposition has misstated those allegations, embellished them with various assertions that go well beyond the allegations set forth in the Complaint, and in at least one case even contradicted these allegations. In considering Defendant AARP's motion to dismiss, the Court should disregard these misstatements and embellishments as unsupported even by inferences from the allegations of the Complaint. In particular, Defendant AARP notes the following misstatements and embellishments:

1. Plaintiff asserts that she attempted to discuss with her supervisor, Eric Seidman, "issues of concern" allegedly expressed to her by her staff concerning alleged inappropriate comments that he made to them. (Opposition at 1-2, citing Complaint, ¶8). However, there is <u>no</u> allegation anywhere in the Complaint that she <u>ever</u> sought to discuss these alleged "issues of concern" with Mr. Seidman.

2. Plaintiff asserts that in mid-June, 2003, Editor Steven Slon made a statement about looking for another job "as part of a hostile and threatening <u>rage</u>." (Opposition at 2, citing Complaint, ¶11). In fact, the Complaint alleges only that Mr. Slon made this statement "in a hostile and threatening <u>manner</u>," a far less extreme concept. (Complaint, ¶10.)

3. Plaintiff further asserts that "Mr. Slon's outburst was so intense that even he noticed the effect" on her. (Opposition at 2, citing Complaint, ¶11). The Complaint contains no such allegations regarding either the intensity of the alleged "outburst," or Mr. Slon's observations of its alleged effect on her.

4. Plaintiff asserts that she "realized at that point that the management of AARP would not protect her staff from the sexual harassment from Mr. Seidman and would in fact punish her for attempting to resist these illegal activities." (Opposition at 2, citing nothing). There is no such allegation anywhere in the Complaint; the assertion is, instead, simply argument.

5. Plaintiff asserts that after this alleged mid-June 2003 incident, a campaign to terminate her began that included requests that she resign. (Opposition at 2.) However, this assertion directly contradicts the Complaint's allegations that the requests to resign occurred on June 9, 2003 and a week later, <u>before</u> the alleged mid-June 2003 incident. (Complaint, ¶¶13-14.)

6. Plaintiff asserts that "on several occasions" she was caused to leave meetings with management "in tears." (Opposition at 2, citing Complaint ¶13.) The Complaint, however, alleges only <u>one</u> such situation, on June 9, 2003, also before the alleged mid-June 2003 incident. (Complaint, ¶13.)

7. Plaintiff asserts that she answered a Performance Concerns Memorandum given to her on July 7, 2003 with a reply that "once again, put AARP on notice" of alleged sexual harassment and of individual managers' alleged attempts to terminate her in retaliation for her alleged attempts to fight the alleged harassment and alleged hostile work environment it created. (Opposition at 3, citing Complaint, ¶15.) However, the cited portion of her Complaint specifically alleges that <u>she left out of the submitted version of her response all references to her complaint of harassment</u>. Furthermore, there is no allegation that she "put AARP on notice" of these matters at any previous time.[2]

8. Plaintiff asserts that Defendant AARP's response to her harassment complaint was "a half-hearted investigation that ultimately failed to address either the harassment or the retaliation." (Opposition at 3, citing Complaint, ¶¶16-18.) Once again, these assertions have no support in the Complaint, which contains <u>no allegations whatsoever</u> containing the effort put in to the investigation or its results. <u>Id</u>.

It is, of course, true that the Court must construe the allegations that <u>are actually in the Complaint</u> in favor of the Plaintiff and draw all reasonable inferences in her favor. However, this is not a license for Plaintiff to write on whole cloth in her Opposition, much less ask the Court to consider, additional assertions that are not in the Complaint, or to raise inferences not even founded on allegations in the Complaint.

Accordingly, in considering the Motion to Dismiss the Court should reject the unfounded assertions discussed above, and rely only on the allegations actually stated

---

[2] She elsewhere does allege that later, at the end of July, she "released her initial full-length response" (Complaint, ¶17), which the allegations of ¶15 indicate contained the references to a complaint of harassment that she deleted from the version originally submitted.

in the Complaint. Of course, as noted in Defendant AARP's opening brief, Defendant AARP reserves the right to dispute vigorously even these allegations, which, among other things, lack factual support, misstate the timing of various events, and ignore the many deficiencies in Plaintiff's performance, her repeated defiance and insubordination toward her superiors, her mistreatment of her own subordinates, and the unsubstantiated nature of her allegations of sexual harassment.

## II. PLAINTIFF HAS FAILED TO POINT TO ANY ALLEGATIONS SUFFICIENT TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Whether or not Plaintiff's improper misstatements and embellishments of her Complaint are considered, she still has failed to show that she has stated a claim for intentional infliction of emotional distress, whether with respect to the necessary degree of intent or severity of distress, or the degree of "outrageousness" required.

At the outset, it is important to emphasize that Plaintiff nowhere alleges that she was herself (as opposed to her staff) ever subjected to any sexual harassment, much less that such alleged sexual harassment caused her emotional distress. Rather, the alleged bases for her intentional infliction of emotional distress claim are solely (1) that "Defendant AARP's conduct regarding Ms. Tiefenbacher's protected activity in opposition of the sexual harassment and subsequent decision to terminate her employment was extreme, outrageous, intentional and reckless," (Complaint, ¶ 31), and (2) that as a result she has damages that include emotional distress. (Id., ¶32.) Whatever the nature or extent of Mr. Seidman's alleged sexual harassment (which, in any event, as alleged involved only three types of allegedly offensive statements, see Complaint, ¶8), this conduct is not alleged to be the basis for Plaintiff's intentional

infliction of emotional distress claim. Her claim must rise or fall solely on the <u>alleged retaliation</u> against her for allegedly opposing the alleged sexual harassment.

With respect to intent, Plaintiff appears to think it sufficient to allege that Defendant AARP acted intentionally or recklessly in retaliating against her. (Opposition at 5). She points to no alleged facts adequate to meet the requirement that Plaintiff establish that Defendant AARP desired to inflict emotional distress, knew that such distress was substantially certain, or acted recklessly in deliberate disregard of a high degree of probability that emotional distress would follow. As noted in Defendant AARP's opening brief at 7, however, she must do so to state a claim of intentional infliction of emotional distress.

Moreover, Plaintiff entirely ignores the requirement that there be allegations showing that any emotional distress suffered was <u>extreme</u>. To the contrary, as noted in Defendant AARP's opening brief at 9, she has failed to even allege extreme emotional distress. In fact, the only specific examples of emotional distress that she references are being "physically shaken and distraught" on one occasion (Complaint, ¶11); leaving an office "in tears" on another, <u>prior</u> to her alleged oppositional activities (<u>id</u>., ¶13); and being "deeply distressed" at receiving a memorandum concerning her performance. (<u>Id</u>., ¶14.) None of these, separately or together, come close to describing the type of extreme emotional distress required for this tort.

Finally, Plaintiff simply asserts, without citation, that the conduct she alleges is sufficiently "outrageous" to state a claim. (Opposition at 5.) For the reasons and authority already stated in Defendant AARP's opening brief at 7-9, this simply is not true. There is ample precedent supporting a finding by the Court that the receipt of a

memorandum concerning performance and a subsequent allegedly retaliatory discharge, even when combined with a prior alleged threat of termination or becoming the "object of derision," simply does not rise to the level of the type of "extreme and outrageous" conduct required for this tort under District of Columbia law. The decisions in <u>Kerrigan v. Britches of Georgetowne, Inc.</u>, 705 A.2d 624 (1997), and <u>Jackson v. American Chemical Soc.</u>, 812 F. Supp. 239 (D.D.C. 1993), together establish that alleged discriminatory acts of retaliation such as these do not establish an independent claim of intentional infliction of emotional distress – particularly where, as here, the Plaintiff is not herself the alleged victim of the underlying alleged sexual harassment. As this Court has held, merely deploying the "requisite emotional distress buzzwords" is insufficient to establish this tort; a plaintiff must plead facts supporting the conclusion that the alleged conduct was "extreme and outrageous." <u>See</u> <u>Steele v. Isikoff</u>, 130 F. Supp. 2d 23, 35-36 (D.D.C. 2000) (Kollar-Kotelly, J.) and cases cited therein.

Accordingly, Plaintiff has failed to state a claim for intentional infliction of emotional distress. To allow her claim to go forward would ignore the high standards of culpability, outrageousness and harm required to establish this tort. Consequently, Count III should be dismissed for failure to state a claim, with prejudice.

### III. **CONCLUSION**

The conduct alleged by Plaintiff is insufficient to establish (1) the intentional or reckless conduct, and/or (2) the extreme and outrageous conduct, and/or (3) the extreme emotional distress necessary to state a claim of intentional infliction of emotional distress. Accordingly, Count III of the Complaint fails to state a claim on which relief can be granted.

- 7 -

WHEREFORE, Defendant AARP respectfully requests that Count III of the Complaint be dismissed in its entirety, with prejudice, and that it be awarded such other relief as the Court may deem appropriate.

               Respectfully submitted,

               EPSTEIN BECKER & GREEN, P.C.

               /s/
               Frank C. Morris, Jr.
               Bar No. 211482
               Brian Steinbach
               Bar No. 256727
               1227 25th Street, N.W.
               Washington, D.C. 20037
               (202) 861-0900

DATED: January 27, 2006               Attorneys for Defendant AARP

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing Reply in Support of Motion to Dismiss Count III was served this 27th day of January, 2006, by electronic service, on the following:

>Lawrence A. Thrower, Esq.
>The Law Office of Lawrence A. Thrower
>1229 15th Street, N.W.
>Washington, D.C. 20005
>
>Attorney for Plaintiff

>_____/s/_____
>Brian Steinbach
>D.C. Bar No. 256727